# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

PETER J. MUNOZ, JR.,

    *Petitioner*,

vs.

GREGORY SMITH, *et al.*,

    *Respondents*.

3:11-cv-00197-LRH-RAM

ORDER

This habeas matter under 28 U.S.C. § 2254 comes before the Court on respondents' motion to dismiss. (ECF No. 93.)

### *Background*

Petitioner Peter Munoz challenges his 2006 Nevada state conviction, pursuant to an *Alford* plea, of attempted lewdness with a child under the age of 14 and a special sentence of lifetime supervision imposed by the judgment of conviction.

Ground 1 of the first amended petition raised a number of issues regarding the special sentence of lifetime supervision. (ECF No. 69, at 8-12.) On respondents' first motion to dismiss, the Court held that Ground 1 of the first amended petition (a) was ripe for decision because the conditions of lifetime supervision had been set following Munoz' release from physical custody and (b) was not subject to dismissal for lack of exhaustion due to an absence of then-available state corrective process. (ECF No. 81, at 1-3.) The Court directed further briefing, on a second motion to dismiss, on the issue of whether the claims in Ground 1 challenged only the conditions of rather than the fact of confinement – *i.e.*, challenged only certain conditions of the sentence of lifetime supervision and not the sentence itself – and thus were cognizable instead only under 42 U.S.C. § 1983. (*Id.*, at 4-5.)

In the briefing on the second motion to dismiss, Munoz conceded that some of the claims in Ground 1 challenged only lifetime supervision conditions and therefore were not cognizable; but he maintained that other claims therein challenged the validity of lifetime supervision itself. The Court, in turn, agreed with respondents that Ground 1 consisted of a vague assortment of claims of different constitutional violations. The Court granted the motion to dismiss in part and gave Munoz an opportunity to file an amended petition "that abandons the claims for relief that are not available under habeas corpus and that enumerates each claim for relief that does remain." (ECF No. 86.)

In the second amended petition, Munoz presents an amended Ground 1 with four subgrounds. As backdrop to the individual claims, he alleges, *inter alia*, that: (1) at the time of his plea, sentencing and judgment of conviction in 2006, the then-existing lifetime supervision statute, N.R.S. 213.1243, *as amended through* 2005 Laws, ch. 507, § 35, did not identify any specific conditions of such lifetime supervision; (2) under N.R.S. 213.290, the conditions of lifetime supervision are not established until just prior to the inmate's release from physical custody, via a proceeding as to which Munoz did not receive either prior notice or an opportunity to be heard; and (3) he thus did not learn what specific conditions were imposed until April 3, 2013, following his release from physical custody. (ECF No. 89, at 10-14.)

In Ground 1(a), Munoz alleges that Nevada's lifetime supervision laws are void for vagueness in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments because the Nevada statutes do not provide fair notice to a defendant such as Munoz of the lifetime supervision conditions that will be imposed until after he has completed his prison sentence, as the statutes did not specify what conditions may be imposed and what lifetime supervision thus meant. He alleges that the failure of the statute to define lifetime supervision renders the sentence of lifetime supervision unconstitutional. (*Id.*, at 14-15.)

In Ground 1(b), Munoz alleges that Nevada's lifetime supervision laws violate constitutional prohibitions against *ex post facto* laws and impairment of contracts because they retroactively vary the terms contained in plea bargains, including his own. He alleges that "an Ex Post Facto violation occurs where the law at the time of crime contained no definition of lifetime supervision, and seven years after the crime, the State defined lifetime supervision as [containing numerous specific conditions]." He

| | |
|---|---|
| 1 | concludes that "[b]ecause Munoz's sentence of lifetime supervision violates the Ex Post Facto clause, |
| 2 | it is unconstitutional and Munoz is entitled to immediate release from lifetime supervision." (*Id.*, at 15- |
| 3 | 16.) |
| 4 | In Ground 1(c), Munoz alleges that the failure to advise him of the potential conditions of his |
| 5 | lifetime supervision at the time of his plea renders his plea unknowing and involuntary. He alleges |
| 6 | further that "[t]he lifetime supervision conditions operate as a substantial impairment to the preexisting |
| 7 | contractual relationship between the state and Munoz as set forth in his plea bargain by imposing new |
| 8 | terms not negotiated with drastically increased lifetime supervision conditions in violation of Article |
| 9 | I, § 10, of the United States Constitution." (*Id.*, at 16.) |
| 10 | In Ground 1(d), Munoz alleges that: (1) under the recent decision in *McNeill v. State*, 375 P.3d |
| 11 | 1022, 1026 (Nev. 2016), the parole board cannot impose conditions of lifetime supervision that are not |
| 12 | specifically enumerated in N.R.S. 213.1243; (2) the State therefore could not lawfully impose any |
| 13 | conditions of lifetime supervision on Munoz because no specific conditions were enumerated in N.R.S. |
| 14 | 213.1243 at the time of his conviction; (3) this clarification of state law must be applied retroactively |
| 15 | to Munoz' case under *Fiore v. White*, 531 U.S. 225, 228 (2001); and (4) Munoz additionally has a |
| 16 | constitutionally protected liberty interest in having Nevada law applied to him in the same manner as |
| 17 | it is applied to similarly situated litigants, under *Hicks v. Oklahoma*, 447 U.S. 343, 347 (1980). He |
| 18 | concludes that "[s]ince no conditions of lifetime supervision may be imposed, Munoz is entitled to |
| 19 | immediate release from lifetime supervision." (*Id.*, at 16-17.) |
| 20 | In the motion to dismiss, respondents contend that: (1) Ground 1(d) is duplicative of Grounds |
| 21 | 1(a) and 1(b); (2) Grounds 1(b) and 1(d) are not cognizable; and (3) Ground 1(d) is not exhausted. |

***Discussion***

*Allegedly Duplicative Claims*

Respondents contend that Ground 1(d) is duplicative because (1) Ground 1(d) alleges "that because no conditions were enumerated in the statute at the time of [Munoz'] conviction, no conditions may be imposed on him now," while (2) Ground 1(a) "challenges the statute in place at the time of Munoz's conviction" and Ground 1(b) "challenges the application of new conditions on Munoz's lifetime supervision." (ECF No. 93, at 3.) The Court is not persuaded. These three claims all clearly

present distinct legal claims arising under different constitutional guarantees. The fact that the distinct legal claims all arise from a common core of operative fact – the imposition of conditions of lifetime supervision despite no conditions being enumerated in the statute at the time of the conviction and/or the time of the offense – does not make the claims duplicative claims when they are based on different legal theories. The Court told Munoz that he needed to specifically enumerate his claims, and he did so. No duplicative legal claims are presented.

*Cognizability*

Respondents contend that Grounds 1(b) and 1(d) are not cognizable in habeas rather than under § 1983 pursuant to controlling case law including *Nettles v. Grounds*, 830 F.3d 922 (9th Cir. 2016) (*en banc*). Respondents contend that these claims "address not the legality of the imposition and validity of lifetime supervision, but the conditions imposed upon Munoz's release on lifetime supervision." They urge that "[e]ven if this Court granted Munoz relief on [the claims], the remedy would not be immediate release from lifetime supervision, but an analysis of the conditions that could be applied to his lifetime supervision under applicable state law." (ECF No. 93, at 5.)

Respondents misread petitioner's current claims and are arguing the merits, not cognizability. Munoz clearly claims that the State can impose *no* lifetime supervision conditions on him because there were *no* conditions enumerated in the statute at what he claims is the relevant time. There thus would be no – under petitioner's theory of the case on the claims – possible permissible conditions for the Court to parse from impermissible conditions. Moreover, Munoz also clearly alleges on both claims that the alleged constitutional violations require that he be "released from lifetime supervision," not merely from certain conditions but not others. Indeed, if petitioner's claims ultimately were to prove to have merit, it would be difficult to discern a distinction with a difference between a purportedly valid sentence of lifetime supervision that could impose no conditions and an invalid sentence of lifetime supervision. Whether Munoz will be entitled to the relief requested is a matter to be determined on the merits, but he clearly has alleged claims that are cognizable in habeas. He challenges the sentence itself, not merely certain conditions.

In this same vein, respondents argue in the reply memorandum that Munoz' claims misapply state law because in *McNeill* the Supreme Court of Nevada applied an amended version of the statute

in force after the inmate's underlying term sentence was discharged rather than the version of the statute in force at the time of either the offense or conviction. (ECF No. 97, at 4-5.)

Respondents point to what Munoz instead appears to argue is an incongruity in the *McNeill* decision. The relevant statute, N.R.S. 213.1243, was amended in 1997, 2005, 2007 and 2009. The statute did not enumerate any conditions of lifetime supervision until the 2007 amendment, which were thereafter expanded further in 2009.[1] Both McNeill's and Munoz' offenses and convictions occurred prior to the 2007 amendment, and the conditions of their lifetime supervision sentences were imposed years later – after the 2007 amendment in McNeill's case and the 2009 amendment in Munoz' case.[2] In *McNeill*, the Supreme Court of Nevada held that the only lifetime supervision conditions that could be imposed under Nevada state law were those set forth in the statute. The state high court did not expressly distinguish between the different amended versions over time when it discussed the statute, but it clearly applied the 2009 amended version of the statute.[3] If Nevada state law requires that only conditions that are set forth by the legislature in the statute can be imposed on a defendant, then a question potentially arises as to whether, under federal constitutional law, any such conditions can be imposed on a defendant where no conditions were set forth in the statute at the time of his offense and/or conviction. It does not appear from the *McNeill* opinion that any such federal law issue was expressly addressed in that case. It does appear that such federal law issues are being raised in this case. Respondents again are arguing what in truth are merits issues as cognizability issues.[4]

---

[1] *See* N.R.S. 213.1243, *as variously amended by* 1997 Laws, ch. 203, § 7; 1997 Laws, ch. 314, §14; 2005 Laws, ch. 507, § 35; 2007 Laws, ch. 418, § 5; 2009 Laws, ch. 300, § 2.

[2] The *McNeill* opinion reflects that McNeill's lifetime supervision began approximately five years prior to March 2013, which substantially lines up with the November 16, 2007, sentence expiration date shown on the NDOC inmate locator page for McNeill. The state district court's online docket sheet reflects that McNeill was charged and convicted in 2004 in No. 04C204263 in the Eighth Judicial District Court for Nevada.

[3] *Compare McNeill*, 375 P.3d at 1025 & 1026-27, *with* N.R.S. 213.1243, *as amended by* 2009 Laws, ch. 300, § 2, *and* N.R.S. 213.1243, *as amended by* 2007 Laws, ch. 418, § 5.

[4] The Court will not be bound by any explicit or implicit holdings by the state supreme court on any federal constitutional issues that follow upon *McNeill*'s core state law holding that the only conditions that may be imposed under Nevada law are conditions set forth in the statute. The Court expresses no opinion, however, as to the proper resolution of any merits issue in this case. *Cf. Matthew Corzine v. Adam Laxalt*, 2017 WL 3159990, at *4-6 (D. Nev.,
(continued...)

Grounds 1(b) and 1(d) therefore present federal law claims that are cognizable in a federal habeas proceeding. The Court notes, however, that Munoz includes allegations in Grounds 1(a) and 1(b) regarding alleged violations of Nevada constitutional law. (*See* ECF No. 89, at 14, line 12, & 15, lines 20-21.) Such claims are not cognizable in a federal habeas proceeding. *See* 28 U.S.C. § 2254(a).

Accordingly, Grounds 1(b) and 1(d) present cognizable federal law claims, but the Nevada state constitutional law claims in Grounds 1(a) and 1(b) are not cognizable.[5]

---

[4](...continued)
July 25, 2017), *affirmed in part*, 708 Fed.Appx. 379, No. 17-16605 (9th Cir., Dec. 26, 2017) (rejecting related arguments in a § 1983 action); *see also American Civil Liberties Union v. Masto*, 670 F.3d 1046, 1050-51 & 1061-66 (9th Cir. 2012) (the State of Nevada judicially admitted that certain movement and residency restrictions adopted in 2007 in N.R.S. 213.1243 could not be applied retroactively to offenders convicted of offenses prior to the adoption of the restrictions). Petitioner, however, clearly presents claims that are cognizable in federal habeas corpus.

The Court further expresses no opinion at this juncture as to any potential procedural or representation issues that might arise if, in the final analysis, Munoz potentially were entitled only to an order vacating only some but not all conditions rather than vacating the lifetime supervision sentence in its entirety. The Court will cross that bridge only if and when the situation should arise. At present, petitioner clearly is seeking a full release from the lifetime supervision sentence. *See generally Richard Lee Carmichael v. Jo Gentry*, No. 2:16-cv-01142-RFB-GWF, ECF No. 19 (D. Nev., March 13, 2018) (discussing procedural and representation ramifications of possibility that a claim in the Federal Public Defender's then-as-yet-unfiled amended petition might arise instead under § 1983).

[5]Respondents additionally urge that Ground 1(d) is "a new claim not previously presented in the first-amended petition," that the Court's prior order permitted amendment only to enumerate the grounds "currently" in Ground 1 of the first-amended petition, and that "Munoz never received permission to present the claim in his amended petition." (ECF No. 93, at 4.) The Court does not read its prior order as restrictively. (*See* ECF No. 86, at 2.) The point of the opportunity for amendment was for petitioner to seek to assert claims regarding the sentence of lifetime supervision that (a) were cognizable claims challenging the sentence itself rather than only certain conditions and (b) were clearly enumerated rather than "a vague collection of different claims of constitutional violations." (*Id.*.) The Court does not read its order as requiring that petitioner first seek permission to present an arguably new legal theory challenging the lifetime supervision sentence within the second amended petition.

Petitioner responded to the above argument as an argument challenging the timeliness of Ground 1(d) under the one-year limitation period, although respondents actually made no such argument in the motion to dismiss. (ECF No. 96, at 6.) Respondents did thereafter respond with an untimeliness argument in the reply. (ECF No. 97, at 3.) The Court is not persuaded – on this timeliness issue that the parties essentially backed into – that Ground 1(d) is untimely. At the outset, however, petitioner's suggestion that the claim is timely because it was raised within one year of the *McNeill* decision is not persuasive. A state court decision in another case does not constitute a "factual predicate" for a claim for purposes of delayed accrual under 28 U.S.C. § 2244(d)(1)(D). *Shannon v. Newland*, 410 F.3d 1083, 1088-89 (9th Cir. 2005). As the Court noted in the preceding section, however, the distinct legal claims in Ground 1 all arise from a common core of operative facts – the imposition of conditions of lifetime supervision despite no conditions being enumerated in the statute at the time of the conviction and/or the time of the offense. The absence of any statutory conditions at the allegedly relevant prior time was specifically alleged in both the original *pro se* petition and the first amended petition. Munoz included, *inter alia*, the following allegation in both pleadings, which was identical except for

(continued...)

***Exhaustion***

Respondents acknowledge the Court's prior holding that the absence of available state corrective process precludes dismissal of the claims challenging the lifetime supervision sentence for lack of exhaustion. (*See* ECF No. 81, at 2-3.) Respondents urge, however, that because Munoz is challenging "the Parole Board's application of non-enumerated conditions on his lifetime supervision" in Ground 1(d), he has available state remedies via a state court action under § 1983 or a petition for a writ of mandamus or prohibition. (ECF No. 93, at 6.) Again, petitioner is challenging the lifetime supervision sentence itself, not merely certain conditions under the sentence. The Court remains unpersuaded by respondents' exhaustion argument, as nothing alleged specifically in Ground 1(d) leads to a conclusion contrary to that reached previously herein with regard to exhaustion of the other claims.

Ground 1(d) is not subject to dismissal for lack of exhaustion.[6]

---

[5](...continued)
verb tense: "Notably, no condition of lifetime supervision [is/was] identified in the statute, the statute providing no notice at all of what such conditions [will/would] ultimately be." (ECF No. 9, at 30; ECF No. 69, at 10.) Relation back ordinarily will be allowed when a new claim is based on the same core of operative facts as the earlier pleading but asserts a different legal theory. *E.g., Mayle v. Felix*, 545 U.S. 644, 664 n.7 (2005). Ground 1(d) relates back to the prior pleadings as it alleges a new legal theory premised upon *McNeill* that is based on the same core of operative facts as the prior pleadings. (Indeed, respondents have argued that Ground 1(d) is duplicative of Grounds 1(a) and 1(b), reflecting the congruity of the core of operative facts underlying the claims.) The Court further notes that respondents did not raise any timeliness defense to the related claims in the first amended petition and instead argued that the claims regarding lifetime supervision were not even ripe yet at that point. (ECF No. 76, at 5-6.) The Court is not persuaded by the late-breaking timeliness defense to Ground 1(d), which is pursued for the first time in a reply in response to an opposition argument by petitioner.

[6]The Court is not persuaded that Ground 1(d) is barred by procedural default due to application of some – as yet unspecified – state procedural bar. This is another issue that the parties "backed into" with no procedural-default defense being raised in the motion to dismiss but with petitioner taking up the issue in his opposition to the motion to dismiss. (*See* ECF No. 96, at 6-7.) While the Court has entertained successive motions to dismiss in this case primarily on issues noted by the Court, the original response order nonetheless prohibits serial presentation of defenses, expressly including procedural default. (*See* ECF No. 73.) If respondents wished to seek dismissal of a ground on the basis of untimeliness, procedural default and/or any other affirmative defense, the time to do so was in the motion to dismiss, not in the reply. In any event, it is difficult to discern what Nevada state procedure a petitioner would employ – short of noncompliance and then being subjected to prosecution – to raise the claim in Ground 1(d). The State routinely opposes claims challenging lifetime supervision prior to an inmate's release as not being ripe before conditions are imposed; but, thereafter, the former inmate cannot bring a state post-conviction petition raising the issue because his term sentence has expired. On the briefing provided, the Court is not persuaded that (a) there was an available procedure and opportunity for Munoz to present the claim in Ground 1(d) that (b) he then failed to timely pursue in a manner that gives rise to the application of a specific established state procedural bar that (c) he cannot possibly overcome given the timing of the 2016 *McNeill* decision establishing the underlying state law predicate for the federal claim.

1    IT THEREFORE IS ORDERED that respondents' motion to dismiss (ECF No. 93) is
2 GRANTED IN PART and DENIED IN PART such that the claims asserted under the Nevada State
3 Constitution in Grounds 1(a) and 1(b) are DISMISSED without prejudice as noncognizable but with
4 all other claims asserted in the second amended petition, including all federal law claims in Grounds
5 1(a) and 1(b), remaining before the Court.
6    IT FURTHER IS ORDERED that, within **thirty (30) days** of entry of this order, respondents
7 shall file an answer to the remaining claims in the second amended petition and that petitioner may file
8 a reply within **thirty (30) days** of service of the answer.
9    Given the age of this case, the Court is endeavoring even more so to resolve the matter as
10 promptly as is possible. Any requests for extension of time based upon scheduling conflicts between
11 this case and other cases in this District should be sought in the later-filed case, absent extraordinary
12 circumstances.
13    DATED this 24th day of September, 2018.

                                        _____
                                        LARRY R. HICKS
                                        UNITED STATES DISTRICT JUDGE