**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| PETER J. MUNOZ, JR., | Case No.: 3:11-cv-00197-LRH-RAM |
| Petitioner, | **ORDER** |
| v. | |
| GREGORY SMITH, et al., | |
| Respondents. | |

**I.   INTRODUCTION**

Petitioner Peter Munoz, Jr. filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. This matter is before this Court for adjudication of the merits of the remaining claims in Munoz's counseled, second amended petition ("Second Amended Petition"). For the reasons discussed below, this Court denies the Second Amended Petition, grants a certificate of appealability for Ground 1, and directs the Clerk of the Court to enter judgment accordingly.

**II.   BACKGROUND**

Munoz's convictions are the result of events that occurred in Clark County, Nevada, on or between October 1, 2002 and October 31, 2002. ECF No. 70-23. Munoz was charged with sexual assault for "inserting his finger(s) into the genital opening of" his daughter, R.M., a female child under the age of fourteen years. *Id.*; *see also* ECF No. 70-30 at 7. On October 3,

2006, Munoz pleaded guilty pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), to one count of attempted lewdness with a child under the age of 14. ECF No. 70-30. On December 8, 2006, in addition to sentencing Munoz to 48-144 months in prison, the state district court imposed a special sentence of lifetime supervision and ordered Munoz to register as a sex offender after his release from custody. ECF No. 70-2. Munoz did not file a direct appeal.

Munoz filed a state habeas corpus petition on May 22, 2007. ECF No. 70-10. The state district court denied the petition, Munoz appealed, and the Nevada Supreme Court reversed and remanded on May 9, 2008. ECF No. 70-11. The Nevada Supreme Court determined that that "[t]he record on appeal does not support the district court's decision to proceed with an evidentiary hearing without appointing post-conviction counsel." *Id.* at 3. Following an evidentiary hearing on January 30, 2009, the state district court again denied Munoz's state habeas petition. ECF Nos. 70-13, 70-14. Munoz appealed, and the Nevada Supreme Court affirmed on March 11, 2010. ECF No. 70-16. Remittitur issued on April 8, 2010. ECF No.70-17.

Munoz filed his federal habeas petition on March 16, 2011. ECF No. 3-2. On June 3, 2011, this Court ordered Munoz to show cause why his petition should not be dismissed as untimely. ECF No. 8. Munoz responded to this Court's order on June 10, 2011. ECF No. 10. This Court dismissed Munoz's action without prejudice as untimely on August 23, 2011. ECF No. 11. Munoz appealed. ECF No. 15.

While Munoz's appeal was pending before the United States Court of Appeals for the Ninth Circuit, Munoz was released from prison. *See* ECF Nos. 72-9, 72-10. Just before his release, the parole board set out his conditions of lifetime supervision. *Id.*

The United States Court of Appeals for the Ninth Circuit reversed and remanded on September 18, 2013, ordering this Court to hold a hearing to determine whether Munoz

1  diligently pursued his federal petition and alleged extraordinary circumstances making the timely
2  filing of his petition impossible. ECF No. 30. Following pre-hearing briefing by the parties, an
3  evidentiary hearing was held before this Court on July 9, 2014. ECF Nos. 43, 51, 54, 58. And
4  following post-hearing briefing, this Court concluded that equitable tolling was warranted and
5  allowed Munoz the opportunity to file an amended federal habeas petition. ECF Nos. 61, 62, 67.

6  Munoz filed a counseled, amended federal habeas petition on December 8, 2014. ECF
7  No. 69. The Respondents moved to dismiss Ground 1 of Munoz's amended petition on
8  September 15, 2015. ECF No. 76. This Court denied the motion on September 27, 2016, but this
9  Court requested further briefing on whether Ground 1 was addressable in federal habeas corpus.
10 ECF No. 81. The Respondents again moved to dismiss Ground 1 of Munoz's amended petition
11 on November 10, 2016. ECF No. 82. This Court granted the motion to dismiss, in part, and
12 ordered Munoz to file a second amended petition enumerating all the claims currently in Ground
13 1 of the amended petition that were addressable in federal habeas corpus. ECF No. 86.

14 Munoz filed his instant Second Amended Petition on November 9, 2017. ECF No. 89.
15 The Respondents moved to dismiss the Second Amended Petition on February 27, 2018. ECF
16 No. 93. This Court granted the motion to dismiss, in part, on September 24, 2018. ECF No. 98.
17 Specifically, this Court dismissed without prejudice the claims asserted under the Nevada State
18 Constitution in Grounds 1(a) and 1(b) as non-cognizable. *Id.* at 8. This Court made clear that the
19 federal law claims in Grounds 1(a) and 1(b) remain. *Id.*

20 The Respondents answered the remaining grounds in the Second Amended Petition on
21 November 26, 2018. ECF No. 101. Munoz replied on January 25, 2019. ECF No. 107. On
22 January 25, 2019, Munoz also moved for partial dismissal of the Second Amended Petition. ECF
23

No. 108. Specifically, Munoz moved for dismissal of Grounds 1(c) and 2. *Id.* This Court granted Munoz's motion on September 30, 2019. ECF No. 111.

In his remaining grounds for relief, Munoz asserts the following violations of his federal constitutional rights:

> 1(a). He did not receive fair notice of the conditions of his lifetime supervision.
> 1(b). The conditions of his lifetime supervision were determined and applied to him long after his crime was committed in violation of the Ex Post Facto Clause.
> 1(d). The State lacks authority to impose lifetime supervision conditions on him that were not specifically enumerated in the statute at the time of his conviction.

ECF No. 89.

## III. STANDARD OF REVIEW

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*,

538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409-10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

**IV.    DISCUSSION**

In Ground 1, Munoz challenges the constitutionality of his lifetime supervision sentence. This Court previously held that "Ground 1 . . . was not subject to dismissal for lack of exhaustion due to an absence of then-available state corrective process." ECF No. 98 at 1. Accordingly, this Court reviews Ground 1 de novo.

5

Before discussing Munoz's three remaining challenges to his lifetime supervision sentence, this Court will first discuss Nevada's lifetime supervision statutes and Munoz's lifetime supervision conditions. Nevada began imposing a special sentence of lifetime supervision on certain offenders in 1995. Pursuant to Nev. Rev. Stat. § 176.0931(1), "[i]f a defendant is convicted of a sexual offense, the court shall include in sentencing, in addition to any other penalties provided by law, a special sentence of lifetime supervision." This special sentence "commences after any period of probation or any term of imprisonment and any period of release on parole." Nev. Rev. Stat. § 176.0931(2); *see also* Nev. Admin. Code § 213.290.

At the time of Munoz's crime in 2002, Nev. Rev. Stat. § 213.1243—the statute governing lifetime supervision—simply provided that "[t]he board shall establish by regulation a program of lifetime supervision of sex offenders to commence after any period of probation or any term of imprisonment and any period of release on parole. The program must provide for the lifetime supervision of sex offenders by parole and probation officers." 1997 Nevada Laws, ch. 203, § 7 (S.B. 359); 1997 Nevada Laws, ch. 314, § 14 (S.B. 133). Thus, instead of listing any specific conditions of supervision, Nev. Rev. Stat. § 213.1243 delegated the authority to design the lifetime supervision program to the Parole Board. Nev. Rev. Stat. § 213.1243 was amended in 2005, between Munoz's commission of the crime and his plea. *See* 2005 Nevada Laws, ch. 507, § 35 (S.B. 341). However, this amendment did not add any conditions of lifetime supervision.

Munoz's plea agreement provided that he would be subject to lifetime supervision, but it did not provide the conditions of that supervision. *See* ECF No. 70-28 at 3 (providing that Munoz "understand[s] that the Court will include as part of [his] sentence . . . lifetime supervision

6

commencing after [his] period of probation or any term of imprisonment and period of release upon parole; said special sentence of lifetime supervision must begin upon release from incarceration"). And lifetime supervision generally was never mentioned at Munoz's change of plea hearing. *See* ECF No. 70-30.

While Munoz was incarcerated, Nev. Rev. Stat. § 213.1243 was amended twice: in 2007 and 2009. In 2007, Nev. Rev. Stat. § 213.1243 was amended to add that that "the Board shall require as a condition of lifetime supervision that the sex offender . . . not knowingly be within 500 feet of any place . . . that is designed primarily for use by or for children." 2007 Nevada Laws, ch. 528, § 8 (S.B. 471). The amendment also required the Board to "require as a condition of lifetime supervision" that an offender:

> (a) Reside at a location only if the residence is not located within 1,000 feet of any place, or if the place is a structure, within 1,000 feet of the actual structure, that is designed primarily for use by or for children, including, without limitation, a public or private school, a school bus stop, a center or facility that provides day care services, a video arcade, an amusement park, a playground, a park, an athletic field or a facility for youth sports, or a motion picture theater.
> (b) As deemed appropriate by the Chief, be placed under a system of active electronic monitoring that is capable of identifying his location and producing, upon request, reports or records of his presence near or within a crime scene or prohibited area or his departure from a specified geographic location.
> (c) Pay any costs associated with his participation under the system of active electronic monitoring, to the extent of his ability to pay.

*Id.* And in 2009, Nev. Rev. Stat. § 213.1243 was amended to add that "[t]he Board shall require as a condition of lifetime supervision that the sex offender not have contact or communicate with a victim of the sexual offense or a witness who testified against the sex offender." 2009 Nevada Laws, ch. 300, § 2 (A.B. 325).

///

In 2013, Munoz was released from prison, and the following lifetime supervision conditions were established just prior to his release:

1. Not possess any sexually explicit material without prior approval of the supervising officer.
2. Not to patronize a business which offers a sexually related form of entertainment without prior approval of the supervising officer.
3. Not possess any electronic device capable of accessing the internet and not access the internet through any such device or any other means, unless possession of such a device or such access is approved by the parole and probation officer.
4. Abstain from consuming, possessing or having under his control any alcohol.
5. Comply with any protocol concerning the use of prescription medication prescribed by a treating physician, including, without limitation, any protocol concerning the use of psychotropic medication.
6. Inform your assigned Parole and Probation officer if you expect to be or become enrolled as a student at an institution of higher education, if there are changes to the dates of commencement, or of a termination of the defendant's enrollment at an institution of higher education.

ECF No. 72-9 at 3. These conditions appeared to be in addition to the following standard lifetime supervision conditions: reporting to a supervising officer, residing only at a location approved by a supervising officer, not drinking alcoholic beverages, not possessing any controlled substances or weapons, not associating with any ex-felons, cooperating with a supervising officer, complying with all laws, not traveling out of state without approval, maintaining approved employment, paying of applicable fees, abiding by curfew, participating in counseling, submitting to polygraph examinations as requested, no contacting the victim, not using an alias, not obtaining a post office box, and submitting to searches. *Id.* at 4.

In 2016, the Nevada Supreme Court ruled that the Parole Board could not impose conditions beyond those listed in Nev. Rev. Stat. § 213.1243. *McNeill v. State*, 132 Nev. 551, 555, 375 P.3d 1022, 1025 (2016). In response to *McNeill*, on June 19, 2017, the Parole Board amended Munoz's lifetime supervision conditions. ECF No. 102-12 at 2. Munoz is now subject

to only fee, residence, and electronic monitoring conditions. *Id.* Specifically, Munoz is required to "pay the Division of Parole and Probation a supervision fee of at least $30 per month," "reside at a location only if" certain conditions are met, and "be placed under a system of active electronic monitoring that is capable of identifying [his] location." *Id.* at 7-9.

### A. Ground 1(a)

In Ground 1(a), Munoz alleges that Nevada's lifetime supervision statutes violated his federal constitutional right to due process under the Fifth and Fourteenth Amendments because they failed—at the time of his crime, conviction, and sentence—to enumerate any possible lifetime supervision conditions that may be imposed on him. ECF No. 89 at 10, 14. Instead, Munoz did not receive fair notice of his lifetime supervision conditions until after his release from prison. *Id.* at 10. Thus, Munoz maintains that Nevada's lifetime supervision statutes allowed the State to invent and arbitrarily enforce any conditions it chose. ECF No. 107 at 3.[1]

"[T]he Government violates [due process of law] by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 135 S.Ct. 2551, 2556 (2015); *see also Giaccio v. Pennsylvania*, 382 U.S. 399, 402-03 (1966) ("It is established that a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits or

---

[1] The Respondents argue, in part, that Munoz must challenge specific conditions imposed upon him against the Parole Board and that such a challenge to those conditions are not cognizable in federal habeas corpus. ECF No. 101 at 12. Munoz clarified that he is challenging the entirety of his lifetime supervision sentence, not any individual condition of confinement. ECF No. 107 at 3 n.3. Because this Court notes that it previously determined that Munoz "challenges the sentence itself, not merely certain conditions," ECF No. 98 at 4, it declines to consider the Respondents' argument further. *See also Preiser v. Rodriguez*, 411 U.S. 475, 485 (1973) (explaining that a habeas corpus petition is the correct method for a prisoner to challenge the legality of his confinement).

leaves judges and jurors free to decide, without any legal fixed standards, what is prohibited and what is not in each particular case."). This principle applies "to statutes defining elements of crimes" and "to statutes fixing sentences." *Johnson*, 135 S.Ct. at 2557. Regarding the former, "the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983); *see also Hess v. Bd. of Parole & Post-Prison Supervision*, 514 F.3d 909, 913 (9th Cir. 2008) ("[A] state law must establish adequate guidelines to govern the exercise of discretion by state officials so that the law neither 'authorizes [n]or even encourages arbitrary and discriminatory enforcement.'" (quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000))). Regarding the latter, statutes that fix sentences "must specify the range of available sentences with 'sufficient clarity.'" *Beckles v. United States*, 137 S.Ct. 886, 892 (2017) (quoting *United States v. Batchelder*, 442 U.S. 114, 123 (1979)).

      The Nevada Supreme Court, the final arbiter of Nevada law, has concluded that although "[t]he legislative history of Nevada's lifetime supervision law indicates that it was intended to provide law enforcement personnel with a non-punitive tool to assist them in solving crimes," Nevada's "[l]ifetime supervision is a form of punishment because the affirmative disabilities and restraints it places on the sex offender have a direct and immediate effect on the range of punishment imposed." *Palmer v. State*, 118 Nev. 823, 827, 829, 59 P.3d 1192, 1195-96 (2002). Even though lifetime supervision is a form of punishment itself, a violation of a lifetime supervision condition is not punishable until after the offender is released and violates a condition. At this point, the offender has fair notice of the conditions opposed against him. *See Corzine v. Laxalt*, No. 3:17-cv-00052-MMD-WGC, 2017 WL 3159990, at *4 (D. Nev. July 25,

2017) (determining that the defendant "could not have been punished for violating any conditions" of Rev. Stat. § 213.1243 "until *after* they had actually been imposed, thereby giving him sufficient notice of the prohibited conduct" (emphasis in original)). Accordingly, because Munoz had fair notice at the time he committed his crime and at his plea that he was going to be subject to lifetime supervision conditions upon his release from prison and because he had fair notice of those conditions before any consequences could come about for failure to abide by those conditions, Munoz fails to demonstrate that his federal constitutional right to due process was violated. *Johnson*, 135 S.Ct. at 2556. Munoz is denied federal habeas relief for Ground 1(a).

**B.     Ground 1(b)**

In Ground 1(b), Munoz alleges that Nevada's lifetime supervision statutes violate the Ex Post Facto Clause because the 2007 and 2009 statutory amendments inflicted a greater punishment than the law allowed at the time of his offense. ECF No. 89 at 15; ECF No. 107 at 8.

The Constitution's Ex Post Facto Clause provides that "[n]o State shall . . . pass any . . . ex post facto [l]aw." Art. I, § 10, cl. 1; *see also* Art. I, § 9, cl. 3 ("No . . . ex post facto [l]aw shall be passed."); *Calder v. Bull*, 3 U.S. 386, 390 (1798) ("[A] law shall not be passed concerning, and after the fact, or thing done, or action committed."). The Ex Post Facto Clauses "forbids the Congress and the State to enact any law which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28 (1981) (internal quotation marks omitted); *see also United States v. Paskow*, 11 F.3d 873, 876 (9th Cir. 1993) ("An ex post facto law is not simply one that makes criminal an act that was lawful at the time it was committed, or a law that increases a sentence following the commission of the act for which punishment is imposed. The ex post facto provision applies to a wide range of changes affecting trial procedures and the

mechanics of punishment."). This prohibition was intended "to assure that legislative Acts g[a]ve fair warning of their effect and permit individuals to rely on their meaning until explicitly changed" and to "restrict[ ] governmental power by restraining arbitrary and potentially vindictive legislation." *Weaver*, 450 U.S. at 28-29. There are two elements that "must be present for a criminal or penal law to be ex post facto: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Id.* at 29 (internal footnote omitted). "These two factors must be assessed in connection with the date of the defendant's offense, not of his conviction or sentencing." *Paskow*, 11 F.3d at 877.

Addressing retroactivity, it is clear that the 2007 and 2009 amendments to Nev. Rev. Stat. § 213.1243 were applied to Munoz in a retroactive fashion, as the conditions contained in these amendments and imposed upon Munoz were not included in the statute as it appeared at the time of Munoz's offense in 2002. *See Himes v. Thompson*, 336 F.3d 848, 854 (9th Cir. 2003) ("[A]lthough the new parole regulations were applied in a 1994 hearing, they affected the punishment Himes received for crimes committed in 1978. Therefore, the regulations were applied retroactively."); *Landgraf v. USI Film Products*, 511 U.S. 244, 269-70 (1994) (explaining that in order to determine retroactivity, "the court must ask whether the new provision attaches new legal consequences to events completed before its enactment"). Indeed, the lifetime supervision conditions contained in the 2007 and 2009 amendments to Nev. Rev. Stat. § 213.1243 were placed upon Munoz when he was released from prison in 2013 and remained following the amendment of his conditions in 2017. *See* ECF Nos. 72-9, 102-12.

This Court will now turn to the issue of whether Munoz was disadvantaged by these amendments. "[T]o determine whether a newly enacted legislative scheme constitutes an additional form of punishment," this Court must "determine whether the legislature intended to

impose a criminal punishment or whether its intent was to enact a nonpunitive regulatory scheme." *Am. Civil Liberties Union of Nev. v. Masto*, 670 F.3d 1046, 1053 (9th Cir. 2012) (determining "that the intent of the Nevada legislature in passing [the sex officer registration act] was to create a civil regulatory regime with the purpose of enhancing public safety"). "[I]f the legislature's intent was to create a civil regulatory regime, . . . the issue is whether the law is 'so punitive either in purpose or effect as to negate the State's intention to deem it civil.'" *Id.* (quoting *Smith v. Doe*, 538 U.S. 84, 92 (2003)).

As was explained in Ground 1(a), the Nevada Supreme Court noted that "[t]he legislative history of Nevada's lifetime supervision law indicates that it was intended to provide law enforcement personnel with a non-punitive tool to assist them in solving crimes." *Palmer v. State*, 118 Nev. at 827, 59 P.3d at 1195 (citing Hearing on S.B. 192 Before the Assembly Comm. on Judiciary, 68th Leg. (Nev., April 12, 1995)). The Nevada Supreme Court also noted that "[s]tatements of key legislative leaders indicate that the legislation was intended to create a 'serious civil penalt[y]' to oversee 'dangerous sexual predators, people with a high degree of likelihood of recidivism.'" *Id.* (citing Hearing on S.B. 192 Before the Assembly Comm. on Judiciary, 68th Leg., at 7 (Nev., March 13, 1995) (statement of Senator Mark A. James, Chairman, Senate Comm. on Judiciary)). Although it appears that the Nevada Legislature's "intent was to create a civil regulatory regime," *Masto*, 670 F.3d at 1053, it also appears that the purpose and effect of the lifetime supervision statutes were likely punitive. *See Palmer*, 118 Nev. at 829, 59 P.3d at 1196 ("Lifetime supervision is a form of punishment because the affirmative disabilities and restraints it places on the sex offender have a direct and immediate effect on the range of punishment imposed."); *see also Smith v. Doe*, 538 U.S. 84, 97 (2003) (outlining factors to determine the punitive effect of a statute).

13

However, even if the purpose and effect of the lifetime supervision statutes were likely punitive, Munoz fails to demonstrate that the amendments to Nev. Rev. Stat. § 213.1243 disadvantaged him by increasing his punishment. *Weaver*, 450 U.S. at 29. "A 'speculative and attenuated possibility' of increasing an inmate's punishment is insufficient to violate the ex post facto clause." *Hunter v. Ayers*, 336 F.3d 1007, 1012 (9th Cir. 2003) (citing *Cal. Dep't of Corrections v. Morales*, 514 U.S. 499, 509 (1995)). Here, Munoz's 2013 lifetime supervision terms contained substantially more restrictive and burdensome conditions than just the conditions contained in the 2007 and 2009 amendments to Nev. Rev. Stat. § 213.1243. Accordingly, because the Parole Board imposed more onerous conditions on Munoz in 2013 than the statute provided at the time, it is mere speculation that the 2007 and 2009 amendments to Nev. Rev. Stat. § 213.1243 disadvantaged him. It is also speculative whether the 2007 and 2009 amendments to Nev. Rev. Stat. § 213.1243 increased Munoz's punishment; rather, it appears that Munoz may, at the discretion of the Parole Board, have been subject to the conditions added by the 2007 and 2009 amendments to Nev. Rev. Stat. § 213.1243 regardless of whether those amendments had been added or not.

Because Munoz had failed to demonstrate that he was disadvantaged by the 2007 and 2009 amendments to Nev. Rev. Stat. § 213.1243, Munoz fails to demonstrate a violation of his federal constitutional rights. As such, Munoz is denied federal habeas relief for Ground 1(b).[2]

///

---

[2] Munoz also alleged in Ground 1(b) that Nevada's lifetime supervision statutes violate the prohibition against impairment of contracts because the 2007 and 2009 statutory amendments retroactively varied the terms contained in his plea agreement. ECF No. 89 at 15. Munoz provides no support for this argument in Ground 1(b), and, importantly, this allegation was the subject of Ground 1(c), which Munoz voluntarily dismissed. *See id.* at 16, ECF No. 111. Therefore, this Court declines to address this argument.

14

### C. Ground 1(d)

In Ground 1(d), Munoz alleges that the State lacks authority to impose lifetime supervision conditions on him because the conditions were not specifically enumerated in the statute at the time of his conviction. ECF No. 89 at 11, 16. Munoz elaborates that because state law now prohibits the imposition of conditions not enumerated in the statute, and because no conditions were enumerated in the statute at the time of his conviction, federal law prohibits the imposition of any conditions upon him. ECF No. 107 at 16.

As a reminder, in 2016, the Nevada Supreme Court ruled that the Parole Board could not impose conditions beyond those listed in Nev. Rev. Stat. § 213.1243. *McNeill*, 132 Nev. at 555, 375 P.3d at 1025. If *McNeill* merely clarified Nev. Rev. Stat. § 213.1243, there is no issue of retroactivity, but if it announced a new rule of law, it cannot apply retroactively. *Fiore v. White*, 531 U.S. 225, 228 (2001). The Nevada Supreme Court has concluded that *McNeill* did not announce a new rule. *See White v. State*, Nos. 71929 & 73822, 2018 WL 4908402, *1 (Nev. Oct. 9, 2018). Therefore, under *Fiore*, there is no issue with applying *McNeill* retroactively. 531 U.S. at 228.

However, that being determined, this Court cannot conclude that applying *McNeill* retroactively results in Munoz having no lifetime supervision conditions placed upon him simply because Nev. Rev. Stat. § 213.1243 did not enumerate any conditions of lifetime supervision until the 2007 and 2009 amendments. Rather, in *McNeill*, the Nevada Supreme Court held that "the nonenumerated conditions the Board imposed on McNeill were unlawful, and McNeill did not violate the law when he failed to comply." 132 Nev. at 558, 375 P.3d at 1026. Accordingly, applying *McNeill* retroactively to Munoz only demonstrates that any unenumerated conditions could not be enforced against Munoz. Because Munoz is only currently subjected to conditions

enacted by the legislature, *see* ECF No. 102-12 at 2, and has not faced prosecution for violating any unenforceable conditions, Munoz fails to demonstrate a violation of federal constitutional law. *See Corzine*, 2017 WL 3159990, at *5 ("[T]he only conditions applied to [the defendant] are conditions later enacted by the legislature. Therefore, [the defendant] is not subject to any conditions suffering the statutory and constitutional infirmities identified in *McNeill*."). Munoz is denied federal habeas relief for Ground 1(d).[3]

## V.     CERTIFICATE OF APPEALABILITY

This is a final order adverse to Munoz. Rule 11 of the Rules Governing Section 2254 Cases requires this Court to issue or deny a certificate of appealability (COA). Therefore, this Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002). Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid

---

[3] Munoz requested that this Court "[c]onduct an evidentiary hearing at which proof may be offered concerning the allegations in [his] amended petition and any defenses that may be raised by respondents." ECF No. 89 at 25. Munoz fails to explain what evidence would be presented at an evidentiary hearing. Additionally, this Court has already determined that Munoz is not entitled to relief, and neither further factual development nor any evidence that may be proffered at an evidentiary hearing would affect this Court's reasons for denying relief. Thus, Munoz' request for an evidentiary hearing is denied.

claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

Applying this standard, this Court finds that a certificate of appealability is warranted for Ground 1. Reasonable jurists could debate whether (1) Munoz had fair notice of what the lifetime supervision statutes entailed, thereby inviting arbitrary enforcement, because they failed to list *any* possible conditions at the time of his offense and plea; (2) the amendments to Nev. Rev. Stat. § 213.1243 disadvantaged him and increased his punishment because none of those conditions were listed in the statute at the time of his offense; and (3) that applying *McNeill* retroactively results in him having no lifetime supervision conditions because Nev. Rev. Stat. § 213.1243 did not enumerate any conditions of lifetime supervision at the time of his offense.

**VI. CONCLUSION**

IT IS THEREFORE ORDERED that the Second Amended Petition for Writ of Habeas Corpus (ECF No. 89) is denied.

IT IS FURTHER ORDERED that Petitioner is granted a certificate of appealability for Grounds 1(a), 1(b), and 1(d).

IT IS FURTHER ORDERED that the Clerk of the Court is directed to enter judgment accordingly and close this case.

DATED this 16th day of June, 2020.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE